## J. D. Morris v. The State.

### No. 8397.  Decided April 30, 1924.

**Murder—Continuance—Want of Diligence.**

Where the exercise of the court's discretion in overruling the application for continuance would find ample support in the lack of diligence, and taking into account the number of eyewitnesses who gave testimony in conflict with that expected from the absent witness, it cannot be said that the trial judge was not warranted in holding that if the absent witness had been present, a different result would not have been obtained, and the evidence being sufficient to support the verdict, there is no reversible error.

Appeal from the District Court of Jefferson. Tried below before the Honorable E. A. McDowell.

Appeal from a conviction of murder; penalty, imprisonment for life.

The opinion states the case.

*Blain & Jones,* for appellant.

*Tom Garrard,* Attorney for the State and, *Grover C. Morris,* Assistant Attorney for the State.

MORROW, Presiding Judge.—The offense is murder; punishment fixed at confinement in the penitentiary for life.

Appellant shot and killed the deceased Fleming. The tragedy was described by several eyewitnesses, according to whose testimony the appellant and deceased were walking together and engaging in a conversation, the deceased leading a horse. Appellant fired twice, first killing the horse, and then the deceased. The State's testimony shows affirmatively that the deceased was unarmed and made no demonstration. According to some of the witnesses, deceased was shot while he had his head turned away from the appellant. They had walked together for some moments and were apparently engaged in an argument or controversy of some kind. Some of the conversation was heard by witnesses, the other was not. There were several eyewitnesses. Their descriptions of the encounter are in substantial accord. From the testimony of one of them we take this statement:

"The last time they stopped they were close to me and I heard them talking. Morris said, 'You will fight me' and he said, 'I will fight you'; so they made two or three more steps and Tom said, 'I will fight you right now', and Morris said, 'You will fight me right now eh?' and Tom said, 'Yes'; so they then makes two or three more steps and Tom said, 'You can't do no more than kill me.' Tom Fleming, the dead man, said, 'You can't do no more than kill me' and Morris said, 'I can't do no more than kill you, eh?' and Tom said, 'Yes', and Morris pulls his gun and shoots him and the horse. I was looking at them when the shot was fired; I was about sixty feet from them when the shot was fired; I was two rails from them. At the time the shooting occurred the dead man was not attempting to do anything to this defendant. At the time that Tom was shot he didn't have anything in his hands but a bucket and a rope. He had a bucket in one hand and a rope that he had his horse tied with in the other hand."

The shot which killed the deceased took effect in the head back of the left ear, about the edge of the hair.

The parties were negroes. Appellant bore a good reputation for peace and quietude. There was testimony on behalf of the ap-

pellant by one of the eyewitnesses that while the appellant was walking near the railroad track, the deceased, riding horse back, overtook the appellant and got off his horse, holding his dinner bucket in one hand and a rope leading the horse in the other. An argument ensued in which appellant said: "I am going to see the law and have that house nailed up." Deceased replied: "I would like to see you or any other bastard nail it up." After walking together and engaging in other conversations which the witness did not hear, the shots were fired.

From the testimony of the appellant and others it appears that appellant had painted a house for the deceased and that the deceased had refused to pay the full contract price, claiming that the work was not properly done. Appellant had done further work upon it for which the deceased declined to pay, and when the appellant remonstrated, a knife was drawn upon him by the deceased. Friends interfered and prevented a fight. There was also testimony that deceased had made a threat to cut the appellant with his knife if pay was again demanded. On the morning of the homicide, the deceased, riding a horse, overtook the appellant, threw his stake rope over his shoulder and walked in front of the appellant, who said to deceased: Don't you want to make some arrangements about paying me?" Deceased said, "No," and appellant turned to walk off, remarking that he was going to try to collect it; that he was going to the court house and see if he could not have the deceased's house nailed up. Deceased remarked: "I would like to see you or any old bastard nail up my house." He also used other insulting language and said: "I will kill you," and started toward his pocket. Appellant stepped back, drew his gun and fired two shots. Appellant claimed that the deceased had a bad reputation for fighting and related a number of incidents which had come to his attention illustrative of this disposition.

Threats upon the part of the appellant to kill the deceased if he did not pay him were proved. There was some testimony to the effect that appellant had engaged in corrupt methods to obtain testimony.

Witnesses testified that the deceased's reputation for peace and quietude was good.

The homicide took place on the 28th day of June, 1922. The indictment was filed on the 3rd of August of the same year. The trial took place on June 7, 1923.

A motion to continue on account of the testimony of Dempsey Richards was made and overruled. By Richards, appellant expected to prove that he heard part of the conversation which took place between the appellant and deceased immediately before the homicide and heard deceased say: "I would like to see you, or any other —— nail my house up" and heard appellant reply: "Well, that is what I'll do;" that deceased then replied: "I will kill you then," or words to

that effect; that the deceased at the time had his right hand in his pocket, and that the rope with which the deceased was leading his horse was either on his right shoulder or his left arm, and that his lunch bucket was in his left hand; that the deceased made a movement as if to assault the appellant and said: ''I will fight you any way you want.'' Thereupon the appellant drew his pistol and fired twice.

From the qualification of the bill of exceptions it is shown that the case had been continued because of the absence of the witness Richards and others on the 5th day of October, 1922, and set for the 13th day of November, 1922, when it was again postponed on the same application and set for the June term, 1923.

After the case was postponed in November because of the absence of the witness Richards, no new process was issued until the 5th of May following, and no sufficient reason is given for the appellant's failure to do so. According to the motion, at the time the subpoena was issued for Richards on the 5th day of May, he was in Port Arthur in Jefferson County, where the case was tried. His subpoena was given to an officer who assured the appellant that it would be served and returned in ample time. It was not returned, however, until the 4th of June, and reported that the witness could not be found. The record reveals no action taken by the appellant during the interim to ascertain the cause of or to obviate the delay. The exercise of the court's discretion in overruling the application would find ample support in the lack of diligence. Taking into account the number of eyewitnesses who gave testimony in conflict with that expected from the absent witness, it cannot be said that the learned trial judge was not warranted in holding that if the absent witess had been present a different result would not have been obtained. The motion is not supported by the affidavit of the alleged absent witness; nor is there aught in the record to combat the presumption in favor of the court's ruling to the effect that his attendance upon another trial was not probable.

The State's evidence, if believed, is quite sufficient to support the verdict. The jury heard and rejected appellant's theory of self-defense. There is no complaint of the charge or the ruling of the court on the trial.

No questions other than that to which we have adverted are presented for review.

The judgment is affirmed.

*Affirmed.*